FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 27, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JENNIFER Y.,<br><br>      Plaintiff,<br><br> v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>      Defendant. | NO:  1:21-CV-3116-RMP<br><br>ORDER GRANTING IN PART<br>PLAINTIFF'S MOTION FOR<br>SUMMARY JUDGMENT AND<br>REMANDING FOR ADDITIONAL<br>PROCEEDINGS |

BEFORE THE COURT, without oral argument, are cross-motions for summary judgment from Plaintiff Jennifer Y.[1], ECF No. 10, and Defendant the Commissioner of Social Security (the "Commissioner"), ECF No. 11.  Plaintiff seeks judicial review, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), of the Commissioner's denial of her claim for Social Security Income ("SSI") under Title XVI of the Social Security Act (the "Act").  *See* ECF No. 10.

---

[1] In the interest of protecting Plaintiff's privacy, the Court uses Plaintiff's first name and last initial.

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 1

Having considered the parties' motions, the administrative record, and

relevant law, the Court is fully informed.  For the reasons set forth below, the Court

grants in part summary judgment in favor of Plaintiff, denies summary judgment to

the Commissioner, and remands for further proceedings.

## BACKGROUND

### General Context

Plaintiff applied for SSI on approximately August 27, 2015, alleging disability

beginning on June 1, 2014, when Plaintiff was 42 years old.  Administrative Record

("AR")[2] 195–200.  Plaintiff later amended her onset date to the date of filing.  AR

42, 195.  Plaintiff stated that she was limited in her ability to work due to

fibromyalgia, arthritis, and depression.  AR 212.  The application was denied

initially and upon reconsideration, and Plaintiff requested a hearing.  AR 93, 101.

On May 15, 2018, Plaintiff appeared at a hearing, represented by attorney D.

James Tree, before Administrative Law Judge ("ALJ") Wayne Araki in Yakima,

Washington.  AR 40–72.  The ALJ heard from Plaintiff as well as vocational expert

Anne Jones.  AR 43–72.  ALJ Araki issued an unfavorable decision, and the Appeals

Council denied review.  AR 1–6, 12–33.

---

[2] The AR is filed at ECF No. 8.

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 2

Plaintiff sought review in the U.S. District Court for the Eastern District of Washington.  On May 4, 2020, Magistrate Judge John Rodgers granted in part summary judgment for Plaintiff and remanded the case for additional proceedings. AR 1052–65.  Judge Rodgers determined that the ALJ: (1) improperly rejected Plaintiff's subjective complaints and (2) erroneously evaluated Plaintiff's medical opinion evidence by rejecting the opinions of three doctors.  AR 1056–64. Accordingly, the court remanded the case for "further evaluation of the evidence and medical opinions[,]" including whether or not Plaintiff's depression constitutes a non-severe impairment based on the five-step sequential evaluation process.  AR 1064.

On May 10, 2021, Plaintiff appeared for a second hearing, represented by non-attorney secondary representative Justin Jerez, before ALJ Cecilia LaCara.  AR 997.  Due to the exigencies of the COVID-19 pandemic, all parties appeared telephonically.  AR 997.  Plaintiff and Mr. Lucas testified in response to questions from ALJ LaCara and counsel.  AR 1031–50.

Plaintiff reported that she lives with her mother and father and last worked, as a part-time residential housekeeper, when she was around 40 years old.  AR 1032–33.  Plaintiff testified that she was diagnosed with fibromyalgia around nine years ago.  AR 1034.  Plaintiff takes medications to manage the pain from her fibromyalgia, and Plaintiff reports that the medications lessen but do not fully

1    relieve her pain.  AR 1035.  Plaintiff stated that she goes on short walks to stay

2    active, but her "feet are bad" due to a bunion misalignment.  AR 1034.  Plaintiff did

3    not get surgery to remove the bunion because she takes care of her parents and did

4    not "want to be laid up."  AR 1034–35.  Plaintiff testified that she is able to care for

5    herself and that she and her mother cook and keep the household running.  AR

6    1035−36.  Plaintiff, her mother, and hospice providers care for Plaintiff's father.  AR

7    1036.  Plaintiff stated that she prepares lunches and mows the lawn on a riding

8    lawnmower.  AR 1036–37.  For various household tasks, Plaintiff stated that she will

9    take breaks every twenty minutes because her hands and feet start to hurt.  AR 1039.

10    Plaintiff reported that she takes water pills for swelling in her hands, but the pills do

11    not really help.  AR 1039.  Plaintiff testified that she injured her leg when a family

12    member handed her a chainsaw, and instead of setting the chainsaw down, she set it

13    on her leg.  AR 1037.

14         Plaintiff stated that her primary care physician initially diagnosed her with

15    depression, and she is no longer in counseling.  AR 1037.  She testified that her

16    medication for her depression is the same as the medication she takes for her

17    fibromyalgia.  AR 1037.  Plaintiff reported that she has difficulty falling asleep and

18    gets approximately three to four hours of sleep per night.  AR 1041.

19         Plaintiff reported having a driver's license but only drives occasionally to get

20    groceries for her parents.  AR 1032.  Plaintiff testified that she does not really know

21

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 4

how to use a computer other than to access the internet.  AR 1036.  She stated that she does not have a smartphone or a tablet.  AR 1036.

### ALJ's Decision on Remand

On July 9, 2021, ALJ LaCara issued an unfavorable decision.  AR 994–1021.  Applying the five-step evaluation process, ALJ LaCara found the following:

**Step one:** Plaintiff has not engaged in substantial gainful activity since July 20, 2015, the application date.  AR 999.

**Step two:** Plaintiff has the following severe impairments that are medically determinable and significantly limit her ability to perform basic work activities: fibromyalgia; obesity; a major depressive disorder; and a panic disorder.  AR 999.  The ALJ further found that asthma, sleeping problems, hypertension, and vertigo were nonsevere impairments that have not caused "more than a minimal limitation in [Plaintiff's] ability to perform basis work activities."  AR 1000.  ALJ LaCara briefly evaluated each of the enumerated impairments and cited to portions of the record that she considered dispositive.  AR 1000.

**Step three:** Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926).  AR 1000.  The ALJ considered the possibility of fibromyalgia medically equating a listing such as listing 14.09D, addressing

1    inflammatory arthritis.  AR 1000–1001.  However, the ALJ determined that

2    Plaintiff's fibromyalgia "fails to medically equal any of the 14.00 listings, alone or

3    in combination with the other medically determinable impairments."  AR 1001.

4    The ALJ also considered Plaintiff's obesity pursuant to Social Security Ruling

5    ("SSR") 19-2p but determined that "there is no evidence that [Plaintiff's] obesity, it

6    itself or in combination with other impairments, is of a severity as to medically equal

7    a listing."  AR 1001.  Lastly, the ALJ considered Plaintiff's severe medical

8    impairments but found that the impairments did not meet the criteria under

9    "Paragraph B" (requiring at least two "marked" limitations or one "extreme"

10    limitation) or "Paragraph C" (requiring Plaintiff to establish a minimal capacity to

11    adapt to changes in their environment or to the demands that are not already part of

12    Plaintiff's life).  AR 1003.

13    **Residual Functional Capacity ("RFC"):** Plaintiff has the RFC to: perform

14    light work as defined in 20 C.F.R. § 416.967(b), with several limitations.

15    Specifically, Plaintiff should not be climbing ladders, ropes, or scaffolds.  She also

16    should not engage in frequent balancing, stooping, kneeling, crouching, and

17    crawling or frequent bilateral reaching and handling.  Plaintiff should avoid

18    moderate exposure to non-weather related extreme cold, non-weather-related

19    extreme heat, and hazardous machinery.  She also should avoid excessive vibration

20

21

and exposure to unprotected heights.  She is limited to simple, repetitive task with only occasional decision-making and changes to the work setting.  AR 1003.

In determining Plaintiff's RFC, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her alleged symptoms "are not fully consistent with the overall evidence."  AR 1013.

**Step four:** Plaintiff has no past relevant work activity.  AR 1013.  Although a vocational expert testified that Plaintiff has worked as a house cleaner, the ALJ found that this activity's earnings never met the threshold amounts for substantial gainful activity.  AR 1013.  In considering Plaintiff's age (43 years old), high-school-level education, and RFC, the ALJ determined that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform."  AR 1013.

**Step five:** Plaintiff has not been under a disability, as defined in the Social Security Act, since July 20, 2015, through the date of the ALJ's decision.  AR 1014.

Plaintiff did seek review from the Appeals Council and ALJ LaCara's decision became final on September 7, 2022.  Plaintiff timely brought the instant action before this Court on September 10, 2022.  ECF No. 1.

/ / /

/ / /

/ / /

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 7

1

**LEGAL STANDARD**

2

***Standard of Review***

3

Congress has provided a limited scope of judicial review of the

4

Commissioner's decision. 42 U.S.C. § 405(g).  A court may set aside the

5

Commissioner's denial of benefits only if the ALJ's determination was based on

6

legal error or not supported by substantial evidence.  *See Jones v. Heckler*, 760 F.2d

7

993, 995 (9th Cir. 1985) (citing 42 U.S.C. § 405(g)).  "The [Commissioner's]

8

determination that a claimant is not disabled will be upheld if the findings of fact are

9

supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir.

10

1983) (citing 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere

11

scintilla, but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112,

12

1119 n.10 (9th Cir. 1975); *McCallister v. Sullivan*, 888 F.2d 599, 601–02 (9th Cir.

13

1989).  Substantial evidence "means such evidence as a reasonable mind might

14

accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389,

15

401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the

16

[Commissioner] may reasonably draw from the evidence" also will be upheld.  *Mark*

17

*v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the court considers the

18

record as a whole, not just the evidence supporting the decisions of the

19

Commissioner.  *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989).

20

21

A decision supported by substantial evidence still will be set aside if the proper legal standards were not applied in weighing the evidence and making a decision. *Brawner v. Sec'y of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229–30 (9th Cir. 1987).

### *Definition of Disability*

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A). The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that the claimant is not only unable to do her previous work, but cannot, considering the claimant's age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

/ / /

1

### *Sequential Evaluation Process*

2     The Commissioner has established a five-step sequential evaluation process

3  for determining whether a claimant is disabled.  20 C.F.R. § 416.920.  Step one

4  determines if she is engaged in substantial gainful activities.  If the claimant is

5  engaged in substantial gainful activities, benefits are denied.  20 C.F.R. §

6  416.920(a)(4)(i).

7     If the claimant is not engaged in substantial gainful activities, the decision

8  maker proceeds to step two and determines whether the claimant has a medically

9  severe impairment or combination of impairments.  20 C.F.R. § 416.920(a)(4)(ii). If

10  the claimant does not have a severe impairment or combination of impairments, the

11  disability claim is denied.

12     If the impairment is severe, the evaluation proceeds to the third step, which

13  compares the claimant's impairment with listed impairments acknowledged by the

14  Commissioner to be so severe as to preclude any gainful activity.  20 C.F.R. §

15  416.920(a)(4)(iii); *see also* 20 C.F.R. § 404, Subpt. P, App. 1.  If the impairment

16  meets or equals one of the listed impairments, the claimant is conclusively presumed

17  to be disabled.

18     If the impairment is not one conclusively presumed to be disabling, the

19  evaluation proceeds to the fourth step, which determines whether the impairment

20  prevents the claimant from performing work that he has performed in the past.  If the

21

claimant can perform her previous work, the claimant is not disabled.  20 C.F.R. § 416.920(a)(4)(iv).  At this step, the claimant's RFC assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy considering her residual functional capacity and age, education, and past work experience.  20 C.F.R. § 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in her previous occupation.  *Meanel*, 172 F.3d at 1113. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity, and (2) a "significant number of jobs exist in the national economy" which the claimant can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ISSUES ON APPEAL**

The parties' motions raise the following issues regarding the ALJ's decision:

1.    Did the ALJ erroneously assess Plaintiff's subjective symptom complaints?

2. Did the ALJ erroneously assess the medical opinion evidence?

3. Did the ALJ erroneously find that Plaintiff's fibromyalgia does not meet or equal a listed impairment at step three?

### Subjective Symptom Testimony

Plaintiff submits that the ALJ erroneously relied on symptom validity tests to find evidence of malingering and otherwise failed to provide clear and convincing reasons for making a negative credibility finding. ECF No. 10 at 5–6. Plaintiff maintains that her ability to care for her aging parents does not support that she is able to perform a full-time job because she rests approximately every twenty minutes and has issues with her hands. *Id.* at 7 (citing AR 1038, 1040−42). Additionally, Plaintiff argues that the ALJ erroneously ignored the "law of the case" in the form of this Court's findings in Plaintiff's prior appeal that fibromyalgia "'is not a condition that generally lends itself to extensive objective findings[,]' and it is not clear such normal findings 'have any bearing on the existence or severity'" of Plaintiff's fibromyalgia. ECF No. 10 at 5 (quoting AR 1059). Plaintiff adds that the district court found that "there were supportive objective findings, such as positive trigger point testing, tenderness, limited ROM, and swelling and nodules in the hands" and other records showing "muscle atrophy in the left shoulder and right quadriceps." *Id.* at 5−6 (citing AR 485, 904, and 1060). Plaintiff maintains that on remand the record was "updated with other findings of fixed flexion in the fingers, synovial swelling in the hands,

limited and painful ROM, tenderness, lack of weightbearing on the toes, positive fibromyalgia tender points, blue fingers, and decreased lower extremity strength. *Id.* at 6 (citing AR 1266−67, 1430, 1436, 1453, 1459, 1469, 1561, and 1597).

In response, the Commissioner argues that the affirmative evidence of symptom magnification or malingering from consultative examiner, R.A. Cline, PhD, relieves the ALJ "from the burden of providing specific, clear, and convincing reasons for discounting a claimant's testimony." ECF No. 11 at 4 (citing *Gregory v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Berry v. Astrue*, 622 F.3d 1228, 1235 (9th Cir. 2010)). Moreover, the Commissioner argues that "the medical evidence did not corroborate Plaintiff's description of debilitating pain." *Id.* at 5. The Commissioner also alleges that the alleviation of fibromyalgia pain through medication, along with Plaintiff's "activities of daily living" as her parents' caretaker undermined her disability claim. *Id.* at 7−8. The Commissioner maintains that the law of the case doctrine does not bar reconsidering the issue of how to treat Plaintiff's subjective symptom testimony because the ALJ considered "additional evidence, including hundreds of additional pages of medical records, and additional testimony from Plaintiff, resulting in a new analysis." ECF No. 11 at 6 (citing AR 22−23, 1012).

1    Plaintiff replies that although the ALJ reviewed additional evidence on

2    remand, "this Court already ruled on the *nature* of the evidence under review,

3    finding [fibromyalgia] 'is not a condition that generally lends itself to extensive

4    objective findings' and it is not clear such normal exam findings 'have any bearing

5    on the existence or severity' of [Plaintiff's fibromyalgia]." ECF No. 12 at 3

6    (emphasis in original). Plaintiff continues that "[t]he ALJ's improper analysis of the

7    additional evidence still failed to follow the law of the case on *how* to assess such

8    evidence, and so harmfully erred." ECF No. 12 at 3 (emphasis in original).

9    The law of the case doctrine applies in a Social Security context and generally

10   prohibits a court "from considering an issue that has already been decided by that

11   same court or a higher court in the same case." *Stacy v. Colvin*, 825 F.3d 563, 567

12   (9th Cir. 2016). However, the Ninth Circuit has determined that the doctrine

13   "should not be applied when the evidence on remand is substantially different, when

14   the controlling law has changed, or when applying the doctrine would be unjust."

15   *Id.* Application of the law of the case doctrine is at the Court's discretion. *Id.*

16   In the May 4, 2020 Order Granting in Part Plaintiff's Motion for Summary

17   Judgment that resolved Plaintiff's prior appeal to the District Court (the "District

18   Court Order"), the magistrate judge found that the first ALJ to hear Plaintiff's claim

19   had failed to provide clear and convincing reasons for discounting Plaintiff's

20   subjective symptom testimony at the first hearing. AR 1059. The District Court

21

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 14

Order found that a single notation in Plaintiff's medical record that Plaintiff "demonstrated give-way weakness" was insufficient to support the ALJ's finding that the record contained evidence of symptom magnification.  AR 1057−58. Without adequate evidence of symptom magnification or malingering, the ALJ was required to provide clear and convincing reasons for discounting Plaintiff's testimony.  AR 1057−58.  The District Court Order further found that the ALJ did not include clear and convincing reasons in his decision because: (1) the single incident of digging in the yard to fix an irrigation problem, the activity that the ALJ found inconsistent with Plaintiff's allegations of widespread pain and a sedentary lifestyle was consistent with Plaintiff's reports because the record indicates that Plaintiff's participation in that activity exacerbated her pain and limitations; and (2) the ALJ could not rely alone on his finding that Plaintiff's allegations were out of proportion with multiple normal exam findings and unremarkable imaging.  AR 1058−59 (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)), for the proposition that an ALJ may not discredit testimony as to the severity of an impairment merely because it is unsupported by medical evidence).  The District Court Order concluded its analysis:

> The Court also takes note that fibromyalgia is not a condition that generally lends itself to extensive objective findings, particularly on imaging. *See generally*, Social Security Ruling 12-2p; *Revels v. Berryhill*, 874 F.3d 648, 656−57 (9th Cir. 2017).  It is not clear that the normal or unremarkable exam findings identified by the ALJ have any bearing on the existence or severity of Plaintiffs fibromyalgia.

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 15

AR 1059.

Following the May 10, 2021 hearing on remand, ALJ LaCara found that Plaintiff's allegations regarding the severity of her impairments "are not fully consistent with the overall evidence." AR 1013. The ALJ found that the longitudinal examination findings do not corroborate Plaintiff's testimony that she is in debilitating pain throughout her body. AR 1012; *see* AR 1035 ("My pain is always there. It's something you just have to live with."), 1039 ("[M]y hands and feet are killing me."). The ALJ explained that physical examinations did not result in positive findings that the ALJ would expect given Plaintiff's alleged degree of pain throughout her body and Plaintiff's limited for standing, walking, or sitting. AR 1012. The ALJ found that, "[t]o the contrary, . . . physical examinations have routinely revealed a normal gait, good musculoskeletal range of motion in the spine and extremities, as well as 5/5 motor strength, normal deep tendon reflexes, and intact sensation throughout the arms and legs." AR 1012 (citing AR 485–86, 521, 660–63, 762, 766–68, 770–72, 777, 1459, 1476, 1577, 1636, and 1651). In addition, the ALJ reasoned:

> The claimant also testified at the May 2021 hearing that she has been able to care for her aging mother and father and that her medications helped control her fibromyalgia pain. Further, the claimant only takes narcotic pain medication and has not undergone an attempt to attend physical therapy. Lastly, Dr. Cline indicated the claimant was positive for symptom magnification in the most recent psychological evaluation, which indicates the claimant's subjective complaints are likely out of proportion to her objective findings.

AR 1012–13 (citing AR 1269–77).

Reviewing ALJ LaCara's decision in light of the District Court Order, the Court first finds that the remand required the agency to reevaluate Plaintiff's subjective complaints. AR 1056–59, 1065. As noted above, the District Court Order reasoned that the first ALJ had not identified sufficient evidence of symptom magnification or malingering. A single instance of digging in the yard was not a specific, clear, and convincing reason to discount Plaintiff's subjective symptom testimony. AR 1058. The District Court Order then found the lack of objective evidence and normal findings in the longitudinal record to be an impermissible basis, standing alone, to discount Plaintiff's complaints. AR 1059. In conclusion, the District Court Order cited to caselaw observing that "fibromyalgia is not a condition that generally lends itself to extensive objective findings, particularly on imaging," and the District Court Order found that "[i]t is not clear that the normal or unremarkable exam findings identified by the ALJ have any bearing on the existence or severity of Plaintiff's fibromyalgia." AR 1059. These are the extent of the rulings in the District Court Order regarding Plaintiff's subjective symptom testimony.

First, the Court does not find any "law of the case" to be followed in the observation in the District Court Order that "fibromyalgia is not a condition that generally lends itself to extensive objective findings, particularly on imaging." *See*

1    AR 1059 (citing SSR 12-2p; *Revels*, 874 F.3d at 656–57).    The ALJ and this Court

2    are required to adhere to Ninth Circuit caselaw regarding the treatment of

3    fibromyalgia in Social Security claims regardless of the contents of the District

4    Court Order.  Second, the second ALJ decision to discount Plaintiff's subjective

5    symptom testimony gave distinct reasons from the reasons rejected by the District

6    Court Order.  The ALJ did not rely on the same daily activity previously rejected

7    and did not solely rely on inconsistency with objective testing and the longitudinal

8    record, which the Court found to be an impermissible basis for discrediting

9    Plaintiff's subjective complaints.  *Compare* AR 23 (2018 decision finding that a

10   2017 comment by Plaintiff that she was digging and doing other landscaping work

11   detracted from the reliability of Plaintiff's complaints) and 1012 (2021 decision

12   finding Plaintiff's ability to care for her aging parents to be inconsistent with the

13   degree of limitation alleged).

14          Moreover, even had Plaintiff identified a specific, binding issue that the Court

15   decided in the prior appeal, the circumstances here do not favor application of the

16   law of the case doctrine.  The ALJ who heard Plaintiff's claim on remand received

17   new testimony from Plaintiff and new medical records.  *See* AR 997–1014.  Due to

18   new evidence submitted on remand and the nature of the Court's prior resolution of

19   the subjective symptom testimony issue, the law of the case doctrine did not prohibit

20

21

ALJ LaCara from revisiting whether Plaintiff's subjective symptom testimony was consistent with her daily activities and the longitudinal record.

In deciding whether to accept a claimant's subjective pain or symptom testimony, an ALJ must perform a two-step analysis. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the ALJ must evaluate "whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if the first test is met and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281.

ALJ LaCara noted that Plaintiff's testimony supported that medications at least partially relieve Plaintiff's pain and, despite any residual pain, Plaintiff is able to care for her aging parents. AR 1012. Indeed, at the 2021 hearing, Plaintiff testified that she drives to shop for groceries for her parents. AR 1032. Plaintiff also explained that she had not pursued the recommended surgery for her bunion, which she testified prevents her from walking more than half of a mile each day, because she has "been taking care of [her mom and dad, and [she] didn't want to be laid up." AR 1035. Plaintiff also testified that medications help address her

fibromyalgia symptoms and that some of her pain and difficulty moving her hands

by the time of the hearing was due to an April 2021 wrist injury in which she was

bitten by a cat and required surgery, and, therefore, not the result of a chronic

condition.  AR 1035, 1039.  Courts have found pain to be well-managed even where

medications have not provided complete relief.  *See Brown v. Comm'r of Soc. Sec.*,

No. 1:20-cv-00721-SAB, 2021 U.S. Dist. LEXIS 170544, at *55 (E.D. Cal. Sep. 8,

2021) (collecting cases).  Moreover, good symptom control through medications and

daily activities that undermine the severity of the symptoms alleged are both clear

and convincing reasons for discounting subjective symptoms testimony.  *See* 20

C.F.R. § 416.929(c)(3)(iv) (instructing adjudicators to consider, inter alia, the "type,

dosage, effectiveness, and side effects of any medication" an individual takes or has

taken to alleviate pain or other symptoms) (emphasis added); SSR 16-3p, 2016 SSR

LEXIS 4 (same); *Norbert S. v. Berryhill*, No. 6:18-cv-00218-AC, 2019 U.S. Dist.

LEXIS 97748, at *8 (D. Or. June 11, 2019) (finding "significant pain mitigation

while taking medication" and daily activities including "yardwork, gardening,

household chores, and exercising" to be clear and convincing reasons).

The ALJ further noted repeated unremarkable physical examinations and

testing in the record.  AR 1012.  "While subjective pain testimony cannot be rejected

on the sole ground that it is not fully corroborated by objective medical evidence, the

medical evidence is still a relevant factor in determining the severity of the

1  claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857

2  (9th Cir. 2001); *Burch v. Barnhart*, 400 F.3d 676, 680−81 (9th Cir. 2005) (minimal

3  objective findings can, when other reasons are present, undermine a claimant's

4  credibility).  The ALJ cited to records throughout the relevant period indicating that

5  Plaintiff regularly exhibited normal range of motion and normal strength, reported to

6  providers that she was not experiencing joint or muscle pain or swelling, and

7  presented at numerous appoints appearing well and "in no acute distress."  *See* AR

8  1012 (citing AR 485–86, 521, 660–63, 762, 766–68, 770–72, 776−77, 1459, 1476,

9  1576−77, 1636, and 1651); *see* AR 773 (prescribing more cardiovascular exercise to

10  reduce the symptoms of fibromyalgia).  These records support the ALJ's

11  interpretation of an incongruity between Plaintiff's assertion that she is "always" in

12  pain and unable to sustain activity levels consistent with competitive employment

13  due to her fibromyalgia symptoms.  *See* AR 1035.  Even if another interpretation

14  could have been supported by the record, it is not the province of this Court to

15  displace the ALJ's role of weighing the evidence and resolving conflicts in the

16  record.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041−42 (9th Cir. 2008).

17      Plaintiff also maintains that the lone finding of symptom magnification by

18  examining psychologist R.A. Cline, Psy. D. does not qualify as affirmative evidence

19  of malingering to displace the burden on the ALJ of articulating clear and

20  convincing reasons.  ECF Nos. 10 at 3−4; 12 at 2.  On four occasions, Dr. Cline

21

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 21

conducted a psychological assessment of Plaintiff for the Washington State

Department of Social and Health Services ("DSHS").  AR 1269.  The most recent

evaluation took place on April 18, 2017, during which Dr. Cline diagnosed Plaintiff

with malingering after administering two different diagnostic tools, a Rey visual

memory test and a Test of Memory Malingering ("TOMM").  AR 1269.

Plaintiff asserts that: the Social Security Administration's internal program

manual (the "POMS") does not authorize purchasing the symptom validity test

("SVT") such as the TOMM used by Dr. Cline; "SSA senior officials" have found

that the SVT does not reliably test malingering; and a research article published in

2004 undermines whether the SVT could be used to determine malingering in

someone with as low of a cognitive assessment score as Plaintiff.  ECF No. 12 at 2

(citing POMS DI 22510.006(D);

https://oig.ssa.gov/sites/default/files/audit/full/pdf/A-08-13-23094.pdf; AR 959; and

https://pubmed.ncbi.nlm.nih.gov/15033228/).  However, as Defendant argues,

nothing cited by Plaintiff carries the force of law or is binding on the ALJ.  ECF No.

11 at 4–5.  Accordingly, Plaintiff does not demonstrate reversible error by the ALJ

in relying on Dr. Cline's opinion of symptom magnification for an additional clear

and convincing reason not to fully credit Plaintiff's subjective symptom testimony.

The Court finds that the ALJ provided sufficient, clear reasons for discounting

Plaintiff's claims of more extreme limitation than reflected in the RFC.  Therefore,

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 22

1  the Court denies Plaintiff's Motion for Summary Judgment and grants summary

2  judgment to the Commissioner with respect to the alleged erroneous treatment of

3  Plaintiff's subjective symptom testimony.

4        ***Medical Opinion Evidence***

5        Plaintiff disputes the ALJ's treatment of three medical source opinions, two

6  from treating physician Esther Hunte, MD, and one from treating physician William

7  Drenguis, MD.  ECF No. 10 at 10–18.

8        The Commissioner responds that substantial evidence supports the ALJ's

9  assessment of the relevant medical opinions.  ECF No. 11 at 10.

10       Plaintiff applied for SSI on approximately August 27, 2015.  AR 195.

11  Revisions to rules guiding the evaluation of medical evidence that took effect on

12  March 27, 2017, do not apply to claims filed before March 27, 2017, and the

13  "treating physician rule" under the previous regulations instead applies.  *See* 20

14  C.F.R. § 416.927.

15       Under the treating physician rule, "the weight afforded to a medical opinion

16  depends upon the source of that opinion. A treating physician's opinion, for

17  example, is entitled to greater weight than the opinions of nontreating physicians."

18  *Coleman v. Saul*, 979 F.3d 751, 756 (9th Cir. 2020).  An ALJ must consider the

19  acceptable medical source opinions of record and assign weight to each.  20 C.F.R.

20  §§ 404.1527(c), 416.927(c).  This responsibility often involves resolving conflicts

21

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 23

and ambiguities in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). To reject the contradicted opinion of a treating or examining physician, the ALJ must provide specific and legitimate reasons for doing so. *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995). "An ALJ can satisfy the substantial evidence requirement by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (citing *Reddick*, 157 F.3d at 725).

An ALJ may discount an otherwise valid medical source opinion as overly conclusory, poorly supported by or inconsistent with the objective medical record, or inordinately reliant on a claimant's self-reported symptoms, provided the ALJ provides clear and convincing reasons to discredit the symptom allegations. *See, e.g., Coleman v. Saul*, 979 F.3d 751, 757–58 (9th Cir. 2020).

### **Esther Hunte, MD**

#### *2017 Opinion*

Plaintiff maintains that ALJ LaCara erred in her treatment of Dr. Hunte's 2017 opinion that Plaintiff would miss four or more workdays per month. ECF No. 10 at 11. Plaintiff argues that this Court already rejected the reasoning offered by ALJ LaCara when the Court vacated the prior ALJ's 2018 decision, and ALJ LaCara

1    was prohibited from rejecting the disabling opinions for identical reasons under the

2    law of the case doctrine.  *Id.* at 11−12.

3         The Commissioner responds that the ALJ properly considered whether Dr.

4    Hunte's 2017 opinion was consistent with the longitudinal medical record.  ECF No.

5    11 at 10.  The Commissioner further argues that the ALJ identified substantial

6    evidence in the record that is inconsistent with Dr. Hunte's opinion, and that

7    substantial evidence supports that "Dr. Hunte was primarily evaluating Plaintiff for

8    fibromyalgia and other physical impairments, and therefore was not qualified to

9    provide an opinion regarding the severity of her mental health."  *Id.* at 11 (citing AR

10   1012).

11        On August 4, 2017, on a form provided by Plaintiff's counsel, Dr. Hunte

12   opined that Plaintiff is unable to work due to depression and fibromyalgia, and

13   Plaintiff would be absent from work four days in the average month.  AR 648–50.

14   In the 2018 decision, the ALJ gave Dr. Hunte's opinion little weight upon finding

15   the opinion to be inconsistent with treatment notes recording that Plaintiff presented

16   to providers "in no acute distress and appearing cooperative and pleasant."  AR 20,

17   24−25.  The ALJ further reasoned that treatment notes recording that Plaintiff had a

18   "normal range of motion of the neck, shoulders, elbows, wrists, fingers, and 5/5

19   motor strength during physical examinations . . . do not corroborate Dr. Hunte's

20   opinion that the claimant is unable to work due to pain."  AR 25.  The ALJ also

21

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 25

found Dr. Hunte's opinion to be unsupported by largely normal radiology records and faulted Dr. Hunte for not providing a function-by-function analysis of Plaintiff's physical functioning. AR 25. The ALJ concluded that Dr. Hunte's opinion had less persuasive weight because Dr. Hunte "relied, in part, on the claimant's self-reported pain and limitations" when Plaintiff's self-report "is not fully reliable, given the discrepancies documented above, including symptom magnification." AR 25.

The District Court Order remanded for reevaluation of Dr. Hunte's 2017 opinion along with the rest of the record. AR 1061. The District Court Order found that, as fibromyalgia is not a condition that is often accompanied by significant objective findings, the normal objective physical findings that the ALJ noted "do not have a clear connection to fibromyalgia, particularly imaging." AR 1060. The District Court Order also found that the record contained objective findings supportive of Dr. Hunte's opinion, including positive trigger point testing, tenderness in various parts of her body, limited range of motion, and objective findings of swelling and nodules in her hands. AR 1060 (internal citations omitted). Additionally, the District Court Order found that the ALJ could not have discounted Dr. Hunte's opinion for being based on Plaintiff's self-reports because the ALJ "failed to offer sufficient reasons for rejecting Plaintiff's subjective reports, and identified no evidence that indicates Dr. Hunte's opinion is more based on Plaintiff's self- reports than her multiple-year treatment relationship and clinical observations."

AR 1061.  Lastly, the District Court Order rejected the ALJ's reasoning regarding a lack of function-by-function assessment of Plaintiff's abilities, determining: "While the ALJ is correct that Dr. Hunte did not provide a function-by-function assessment of all of Plaintiff's abilities, the opinion does include the specific limitation that Plaintiff would miss four or more days of work per month.  The vocational expert testified that such a limitation would prevent someone from being competitively employable."  AR 1061 (citing AR 68–69, 649).

On remand, ALJ LaCara reevaluated Dr. Hunte's 2017 opinion and, like the previous ALJ, assigned it little weight.  AR 1008, 1012.  As for Plaintiff's fibromyalgia, the ALJ first found that Dr. Hunte's opinion is inconsistent with the longitudinal evidence and cited to records indicating that "providers have regularly observed the claimant in no acute distress and appearing cooperative and pleasant." AR 1008 (internal citations omitted).  Second, the ALJ acknowledged the records supporting that Plaintiff registered "positive trigger point findings on several examinations and consistently complained of pain, tenderness on palpation, and limited range of motion in her neck and upper extremities," but found that "the vast majority of the medical evidence of record reveals she has generally presented normal range of motion of the neck, shoulders, elbows, wrists, fingers, and 5/5 motor strength during physical examinations."  AR 1008.  The ALJ continued that in light of the majority of the record evidence indicating normal musculoskeletal and

1  neurological findings for Plaintiff, the ALJ does not find that the evidence supports

2  that Plaintiff would miss more than four days of work per month.  AR 1008.  Third,

3  the ALJ found that Plaintiff's radiology records do not corroborate her allegations of

4  debilitating pain.  AR 1008.  Fourth, the ALJ found that Dr. Hunte did not support

5  her opinion with a function-by-function analysis of Plaintiff's physical functioning.

6  AR 1008.

7       With respect to Plaintiff's depression, the ALJ found that Dr. Hunte's 2017

8  opinion was "internally inconsistent with her own treatment records that routinely

9  notes [sic] the claimant [sic] not in any acute distress and appearing well and

10  cooperative."  AR 1012.  Second, the ALJ found that Dr. Hunte did not provide a

11  function-by-function analysis of the claimant's functioning.  AR 1012.  Third, ALJ

12  LaCara wrote, "Dr. Hunte also does not specialize in mental health treatment and

13  was primarily evaluating the claimant for fibromyalgia and other physical

14  impairments."  AR 1012.

15       ALJ LaCara gave little weight to Dr. Hunte's 2017 opinion for the same

16  reasons that the first ALJ gave little weight to the same opinion: (1) Plaintiff

17  presented to treatment providers as cooperative and in no acute distress; (2) upon

18  examination, Plaintiff had normal range of motion in her neck, shoulders, elbows,

19  wrists, fingers, and 5/5 motor strength; (3) the record contains largely normal

20  radiology records; and (4) Dr. Hunte did not provide a function-by-function analysis.

21

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 28

1  AR 25.  As to these identical reasons, the Court declines to revisit the determinations

2  in the District Court Order under the law of the case doctrine.

3       In addition to the identical reasons offered, ALJ LaCara also offered as a

4  rationale that Dr. Hunte was not qualified to opine as to the disabling effect of

5  Plaintiff's ALJ for rejecting Dr. Hunte does not specialize in mental health treatment

6  and was primarily evaluating the claimant for fibromyalgia and other physical

7  impairments.  AR 1012.  However, the Ninth Circuit has found that a primary care

8  physician who treats a claimant for physical and mental symptoms is qualified to

9  evaluate the claimant's mental limitations, even if the provider is not a psychiatrist.

10  *See Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987); *see also Lester*, 81 F.3d

11  at 833 (ALJ cannot disregard treating physician's opinion on claimant's mental

12  functioning solely because treating physician not a mental health expert; treating

13  physician's opinion constituted competent psychiatric evidence, notwithstanding the

14  fact that physician was not a board-certified psychiatrist*)*.  Therefore, the Court finds

15  that this additional reason is not specific nor legitimate to support giving Dr. Hunte's

16  2017 opinion little weight.

17       The Court finds that the ALJ erred by rejecting the 2017 opinion of Dr. Hunte

18  because she failed to offer bases for her conclusions that were not previously

19  rejected by this Court and that qualify as specific and legitimate reasons supported

20  by substantial evidence in the record.  What is more, the Court finds that the ALJ's

21

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 29

1  error is not harmless because Dr. Hunte's opinion that Plaintiff would miss four or

2  more days per month is disabling in light of Vocational Expert Lucas's testimony

3  that "a person who misses more than one day of work per month, on an ongoing

4  basis, is not going to be able to maintain employment."  AR 1046; *see Molina v.*

5  *Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012) (holding that an error is harmless if it is

6  "inconsequential to the ultimate nondisability determination").

7            *2019 Opinion*

8            Plaintiff asserts that the ALJ's erroneously gave little weight to Dr. Hunte's

9  2019 opinion that Plaintiff is limited to sedentary exertion and has "[v]ery

10  significant" limitations in most basic work activities, including handling pushing,

11  pulling, and reaching.  ECF No. 10 at 13−14 (citing AR 1264−65).  Plaintiff

12  maintains that the ALJ's reasoning that the opinion was not supported by objective

13  examination results, except for an outlying July 2019 examination showing

14  tenderness and reduced wrist range of motion, repeats the ALJ's "failure to properly

15  assess the law of the case," the nature of fibromyalgia, and the objective evidence of

16  record" because "objective findings of the sort the ALJ listed have little bearing" on

17  plaintiff's fibromyalgia.  *Id.* at 14.  Plaintiff further contends that "[t]he ALJ was

18  also not wholly accurate in her summary of the records," as some records contain

19  abnormal findings.  *Id.*

20

21

1    The Commissioner responds that ALJ LaCara reasonably afforded Dr.

2    Hunte's 2019 little weight because Dr. Hunte "provided no support in her treatment

3    notes consistent with a limitation to sedentary work," and, to the contrary, Dr. Hunte

4    performed almost no objective physical examinations (other than checking

5    Plaintiff's cardiac and respiratory function), and she frequently remarked that

6    Plaintiff appeared well, cooperative, and in no acute distress."  ECF No. 11 at 12

7    (citing AR 1401, 1405, 1480, 1496, 1501, 1508, 1514, 1517, 1527, 1533, 1537,

8    1542, 1553, 1560-61, 1566, 1588, 1607, 1611, 1616, 1620, 1630, 1639, 1659, 1669,

9    and 1675).  The Commissioner adds that ALJs "are entitled to weigh

10   doctors' conclusions about a claimant's functional abilities against that doctor's

11   own medical findings."  *Id.* (citing 20 C.F.R. § 416.927(c)(3)).

12   Dr. Hunte completed a Physical Functional Evaluation of Plaintiff for DSHS

13   on March 20, 2019.  AR 1265.  In addition to fibromyalgia and osteoarthritis, Dr.

14   Hunte diagnosed Plaintiff with mild "Meniere's" and opined that Plaintiff is unable

15   to work at heights to vertigo caused by that disease.  AR 1264.  Dr. Hunte opined

16   that, due to her multiple impairments, Plaintiff is limited to sedentary work.  AR

17   1265.  Dr. Hunte further completed a Range of Joint Motion Evaluation Chart for

18   DSHS and noted reduced range of motion in Plaintiff's shoulders, ankles, low back,

19   and neck.  AR 1266–67.

20

21

ALJ LaCara gave Dr. Hunte's 2019 opinion "little weight."  AR 1008–09.

The ALJ noted, "Interestingly, Dr. Hunte remarked that the claimant appeared well,

cooperative, and in no acute distress and performed almost no objective medical

examinations at examinations in 2018, 2019, 2020, 2021."  AR 1008–09 (internal

citations to the medical record omitted).  The ALJ continued, "In fact, with

the exception of some positive tenderness and reduced range of motion in the wrists

in July of 2019, some of the only objective testing Dr. Hunte performed revealed full

range of motion in the AC joints with movement of the arms, full strength, and no

motor or sensory deficits in either extremity."  AR 1009.  However, the ALJ granted

"some weight" to Dr. Hunte's opinion that Plaintiff should not work at heights due

to vertigo, finding that "[t]he evidence of record does not reveal functional

limitations caused by the claimant's diagnosis of vertigo, which is found non-severe

but the undersigned did accommodate no exposure to unprotected heights as a

precaution.  AR 1000.

The Ninth Circuit has explained that:

> Fibromyalgia is a "rheumatic disease that causes inflammation of the
> fibrous connective tissue components of muscles, tendons, ligaments,
> and other tissue." *Benecke [v. Barnhart]*, 379 F.3d [587,] 589 [9th Cir.
> 2004]. Typical symptoms include "chronic pain throughout the body,
> multiple tenderpoints, fatigue, stiffness, and a pattern of sleep
> disturbances that can exacerbate the cycle of pain and fatigue." *Id*. at
> 590. What is unusual about the disease is that those suffering from it
> have "muscle strength, sensory functions, and reflexes [that] are
> normal." *Rollins v. Massanari*, 261 F.3d 853, 863 (9th Cir. 2001)
> (Ferguson, J., dissenting) (quoting Muhammad B. Yunus,

1
2
3
4
5

*Fibromyalgia Syndrome: Blueprint for a Reliable Diagnosis*, Consultant, June 1996, at 1260). "Their joints appear normal, and further musculoskeletal examination indicates no objective joint swelling." *Id*. (quoting Yunus, supra at 1260). Indeed, "[t]here is an absence of symptoms that a lay person may ordinarily associate with joint and muscle pain." *Id*. The condition is diagnosed "entirely on the basis of the patients' reports of pain and other symptoms." *Benecke*, 379 F.3d at 590. "[T]here are no laboratory tests to confirm the diagnosis." *Id*.

6    *Revels v. Berryhill*, 874 F.3d 648, 656 (9th Cir. 2017).

7        The reasons provided by ALJ LaCara for giving little weight to Dr. Hunte's

8    2019 opinion that Plaintiff is limited to sedentary work are in conflict with the Ninth

9    Circuit's guidance in that a lack of objective testing and normal musculoskeletal

10   examinations are not germane reasons for discounting Dr. Hunte's opinion about

11   regarding the severity of Plaintiff's symptoms. *See Timpone v. Kijakazi*, No. 18-

12   55155, 2022 U.S. App. LEXIS 13774, at *3 (9th Cir. May 20, 2022) ("Just stating,

13   as the ALJ did, that a physician's limitations are 'far beyond what is supported by

14   objective testing' is not a specific and legitimate reason to discount a treating

15   physician's opinion in a case involving fibromyalgia.") (quoting *Revels*, 874 F.3d at

16   665). Likewise, appearing well, cooperative, and in no acute distress does not

17   evidently pertain directly to Plaintiff's fibromyalgia symptoms and disregards the

18   Ninth Circuit's instruction to construe medical evidence "in light of fibromyalgia's

19   unique symptoms and diagnostic methods." *See Revels*, 874 F.3d at 662.

20
21

Having determined that the ALJ committed reversible error with respect to Dr. Hunte's 2017 and 2019 opinions, the Court does not address Plaintiff's contentions regarding Dr. Drenguis's opinion.

**Step Three**

Plaintiff argues that the ALJ failed to consider listing 14.09(A)(2) regarding whether Plaintiff's fibromyalgia equaled another impairment. ECF No. 10 at 18–20. For support, Plaintiff cites evidence from rheumatologist Dr. DeAnn Williams, MD's February 2020 exam finding "fixed flexion in the right 5th PIP joint and scattered fixed flexion in the PIP joints of both hands." *Id.* at 19 (citing AR 1469).

The Commissioner responds that Plaintiff "waived any equivalence challenge at step three because she failed to identify any potentially applicable listing either in a pre-hearing brief, at the ALJ hearings, or in her request for Appeals Council review, let alone explain how the medical evidence satisfies each requirement of those Listings." ECF No. 11 at 14.

At step two, the ALJ found that fibromyalgia is a severe impairment for Plaintiff, but, at step three, the ALJ determined that Plaintiff's unlisted impairment of "fibromyalgia fails to medically equal any of the 14.00 listings, alone or in combination with the other medically determinable impairments." AR 1001.

To demonstrate that an unlisted impairment is equivalent to a listed impairment, a claimant "must present medical findings equal in severity to *all* the

criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990).  An ALJ need not evaluate "the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

Plaintiff does not argue that she presented specific evidence at her administrative hearing to establish equivalence with listing 14.09(A)(2).  Instead, Plaintiff's representative made brief reference to medical records that sought to rule out "co-occurring inflammatory arthritis."  AR 1028.  As Plaintiff has not satisfied her burden of proof for step three, the Court denies summary judgment to Plaintiff on this issue and grants summary judgment to the Commissioner with respect to ALJ LaCara's step three assessment.

### Remand for Further Proceedings or Award of Benefits

Lastly, Plaintiff asks the Court to remand her claim for a benefits award.  ECF No. 10 at 21.  The Court may remand a case "either for additional evidence and findings or to award benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).  When the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  However, the Ninth Circuit created a "test for determining when evidence

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 35

should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  The Ninth Circuit has endorsed an award for benefits where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d at 1292.

In this case, the Court has determined that the ALJ committed harmful error regarding Dr. Hunte's 2017 and 2019 medical opinions.  However, the record in this matter does not clearly support a finding of disability.  For instance, a rheumatologist is the specialty practitioner for fibromyalgia.  *See Revels*, 874 F.3d at 656, 662.  The record indicates that the rheumatologist who examined Plaintiff advised conservative treatment, in the form of increased, regular cardiovascular exercise, not consistent with the degree of severity that Plaintiff has alleged.  AR 773.  Therefore, remand for further consideration of this matter is appropriate, particularly to reevaluate the medical evidence in the record.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes that the ALJ's decision is not free of harmful legal error.  Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 10**, is **GRANTED IN PART** and **DENIED IN PART**, as set forth above.

2.    Defendant's Motion for Summary Judgment, **ECF No. 11**, is **DENIED**.

3.    The matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

4.    Judgment shall be entered for Plaintiff.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order, enter judgment for Plaintiff as directed, provide copies to counsel, and **close this case**.

**DATED** September 27, 2022.

_s/ Rosanna Malouf Peterson_
ROSANNA MALOUF PETERSON
Senior United States District Judge